UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSHUA WERTHEIM,

     Plaintiff,

v.                         Case No.:  2:21-cv-509-SPC-NPM

JAMES F. POTTER,

     Defendant.

_____/

## <u>OPINION AND ORDER</u>[1]

Before the Court are cross Motions for Summary Judgment (Docs. 25; 32).  Plaintiff Joshua Wertheim and Defendant James Potter responded and replied where appropriate (Docs. 34; 35; 36; 37).  The Court grants and denies each Motion in part.

## BACKGROUND

This is an employment discrimination case.  Potter is a local county sheriff.  Wertheim worked for the sheriff's office as general counsel.  The relationship soured—spawning claims under the Family and Medical Leave Act ("FMLA") and Florida Civil Rights Act ("FCRA").

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them.  The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

When COVID-19 swept the globe, many employers shifted to remote work.  In response, Wertheim recommended an officewide work-from-home policy for those able to function remotely.  The recommendation went to Potter and Wertheim's supervisor—James Vitali.  But given police duties and to ensure employees' equal treatment, Potter decided against allowing telework.  So Wertheim asked if only he could work remote, citing (among other reasons) his risk from COVID over asthma.  Again, Potter declined.

In an uncanny coincidence, Wertheim's chronic back pain flared up the next day.  With the pandemic blocking access to back injections, he needed to take pain medication, which interfered with his ability to drive to work.  So Wertheim began sick leave.  After that ran out, he took FMLA leave.  At that point, Potter notified Wertheim that—as a key employee—his FMLA rights might be limited.  The human resources director ("Director") made that determination and relayed the information to Vitali.

As weeks progressed with Wertheim still on leave, Potter and Vitali decided the sheriff's office needed legal counsel.  So they hired another lawyer.  Potter's budget, however, would not accommodate two attorneys in the general counsel chair.  So Wertheim was notified he would not be reinstated at the end of leave.  This action followed.

**LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts onto the nonmoving party to point out a genuine dispute. *Beard v. Banks*, 548 U.S. 521, 529 (2006). At this stage, courts view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002). When (as here) the parties file cross summary judgment motions, these principles are unchanged. *Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975); *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012) (viewing facts most favorably to each nonmovant).

**DISCUSSION**

This analysis has three main parts. The Court takes each in turn.

3

## A.  Interference

Wertheim wants summary judgment on Count 1, which alleges Potter interfered with his FMLA rights.  The Court agrees.

"To establish an interference claim, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied.'" *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010) (cleaned up). For interference, the employee "does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001).

Interference has two basic elements: "(1) the employee was entitled to a benefit under the FMLA, and (2) her employer denied that benefit." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). Technical violations are not actionable on their own though. *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021). Instead, employees must also "demonstrate some harm" that courts can remedy through "damages or equitable relief." *Evans v. Books-A-Million*, 762 F.3d 1288, 1296 (11th Cir. 2014) (cleaned up).

The benefit at issue is Wertheim's key employee notice.  29 U.S.C. § 2614(b)(1).  Both parties seem to agree Wertheim was entitled to that benefit,

and he suffered some harm (if the benefit were denied).  So the dispute boils down to whether Potter failed to provide the required notice.

The FMLA contains a seldom-invoked exception.  If someone is a "key employee," she may be exempt from the usual FMLA restoration protections. 29 C.F.R. § 825.217(a); 29 U.S.C. § 2614(b).  These employees are not entitled to restoration if (1) "denial is necessary to prevent substantial and grievous economic injury" to employer operations; (2) employer notifies employee of its intent to deny restoration "at the time the employer determines that such injury would occur"; and (3) if "leave has commenced," employee decides not to return "after receiving such notice." 29 U.S.C. § 2614(b)(1)(A)-(C).  As seen, to exploit this exception, employer must provide employee with the appropriate notice.

The statute and its implementing regulations set out a two-step notice procedure.  Id.; 29 C.F.R. § 825.219(a)-(b); Neel v. Mid-Atl. of Fairfield, LLC, 778 F. Supp. 2d 593, 601-02 (D. Md. 2011).  First, if employer might deny reinstatement, it must inform employee she is "key"—along with the possible consequences should employer determine substantial and grievous economic injury will result from reinstatement.  29 C.F.R. § 825.219(a) ("Notice A"). Second, upon determining injury, employer must notify employee (1) of the decision, (2) "it cannot deny FMLA leave," and (3) it will deny employee's restoration at the end of her leave. 29 C.F.R. § 825.219(b) ("Notice B").  Both

parties recognize one difference: Notice A should say employer "*may deny* reinstatement"; Notice B should say employer "*intends to deny* reinstatement." *Neel*, 778 F. Supp. 2d at 602. This distinction matters because it conveys "the difference between 'perhaps' and 'definitely.'" *Id.*

Notice B requires more though. It "must explain the basis for the employer's finding." *Id.* And—crucially here—if leave began, employer "must provide the employee a reasonable time in which to return to work." *Id.*; *see also* 29 C.F.R. § 825.219(b); 29 U.S.C. § 2614(b)(1)(C) (stating employer can deny restoration if "employee *elects* not to return to employment *after receiving* such notice" (emphasis added)).[2]

The outcome here is simple. Potter interfered with Wertheim's FMLA rights because there wasn't any fully compliant Notice B. Specifically, Potter did not provide Wertheim with notice offering a reasonable time to return to work. Potter's arguments to the contrary fall short.

According to Potter, he provided sufficient notice through a packet of documents dated April 8 ("Packet") and letter dated April 28 ("Letter").

The Packet satisfied Notice A. *See Oby v. Baton Rouge Marriott*, 329 F. Supp. 2d 772, 782-83 (M.D. La. 2004). Taken together, it (1) informed

---

[2] Potter does not challenge the regulation's validity, so he abandoned any argument on that subject. *E.g.*, *Repa v. Roadway Express, Inc.*, 477 F.3d 938, 942 (7th Cir. 2007) (holding failure to challenge validity of FMLA implementing regulations resulted in waiver).

Wertheim of his key employee status, (2) stated what that meant, (3) disclosed Potter might not reinstate Wertheim, and (4) explained what might cause Potter to conclude substantial and grievous economic injury would result. (Doc. 29-1 at 216-18).  All the same, the language did not indicate Potter made the requisite finding and intended to deny reinstatement.  In other words, it could not satisfy Notice B.

So nothing gets lost in translation, the relevant language follows:

> This notice is to inform you that after careful review, we have determined that reinstating you *could indeed result* in substantial and grievous economic injury to our operations, *if we were to need* to employ someone to either temporally or permanently fill your position while conducting normal day to day operations or by engaging in different states of emergency where you counsel is vitally required.

(Doc. 29-1 at 218) (emphasis added).  This notice came in the Packet with another letter.  It said, key employee notice "is required to be provided you *in the event that* [Potter] determines that your reinstatement *would cause* substantial and grievous economic injury."  (Doc. 29-1 at 216) (emphasis added).  None of this was enough to notify Wertheim that Potter made a final decision on injury or intended to deny restoration.  Instead, the Packet only clarified reinstatement might be denied.  *See Neel*, 778 F. Supp. 2d at 602.

Potter's contention otherwise not only ignores the clear words used; it misunderstands the facts.  Within the Packet was a standard Department of

Labor form.  (Doc. 29-1 at 221).  The paper identified Wertheim as a key employee.  But it specifically noted no final decision was made:

> We __ have/ ✔ have not determined that restoring you to employment at the conclusion of FMLA leave will cause substantial and grievous economic harm to us (at this time and date 4/8/20).

(Doc. 29-1 at 221).  This jibes with the witness testimony that the decision on injury and reinstatement was made weeks later.  (Docs. 27 at 4, 7-10; 26 at 2; 28 at 6, 13-14, 20-21).  That was well after Wertheim received the Packet.  So any notion the Packet was a final decision sufficient to satisfy Notice B fails.

Because the Packet did not discharge Notice B, the issue becomes whether Letter did so.  In most ways, the Letter probably met the requirements.  For instance, it clarified Wertheim would not be reinstated and explained doing so would work a substantial and grievous economic injury to the sheriff's office.  (Doc. 29-1 at 260).  As mentioned, however, employer must give employee a reasonable chance to return to work following Notice B.  The Letter did not do that.  Director conceded as much.  (Doc. 28 at 9, 15-16).

Even without the concession, nothing suggests Wertheim could return to work after receiving the Letter.  In fact, Potter filled the position before sending it.  So by that point, reinstatement was no longer realistic.  Like Wertheim argues, this deprived his guaranteed opportunity to decide whether the remaining FMLA leave was worth losing his job.  So he was denied an FMLA

benefit. *Neel*, 778 F. Supp. 2d at 603-04 ("The Court concludes [employer] interfered with [employee's] FMLA rights by failing to . . . offer her a reasonable time in which to return to work after notification of its intent to deny restoration.").

In part, Potter argues this interpretation renders Notice B an ultimatum prohibited by the general FMLA framework. That is a nonstarter. No matter how Potter wants to characterize Notice B, it is required by the plain language of the statutory and regulatory scheme.[3] Each court to address this issue agrees the regulations mean what they say, so employers must give the appropriate notice—at the appropriate time—to enjoy the key employee exception. *E.g.*, *Meadows v. Texar Fed. Credit Union*, No. 5:05CV158, 2007 WL 192942, at *31 (E.D. Tex. Jan. 22, 2007); *Lane v. Grant Cnty.*, No. CV-11-309-RHW, 2013 WL 209178, at *4-5 (E.D. Wash. Jan. 17, 2013); *Kenney v. Bethany Home of R.I.*, No. 09-cv-289-ML, 2011 WL 1770537, at *4 (D.R.I. May 9, 2011).

What's more, calling the only reasonable interpretation of Notice B an impermissible ultimatum misconstrues the point of notice. "FMLA notice provisions exist to ensure that employees make informed decisions about leave." *Ramji*, 992 F.3d at 1246 (cleaned up). If Potter provided notice and a reasonable time to return (even if that's like an ultimatum), Wertheim would

---

[3] Again, Potter failed to challenge the validity of the relevant regulations. So he forfeited any attack on the Department of Labor's interpretation of the corresponding statutes.

have the chance to weigh his options and make an educated choice.  Simply put, the FMLA notice provision would have done its intended job.

At bottom, Potter interfered with Wertheim's FMLA rights by not providing sufficient notice under 29 C.F.R. § 825.219(b).  So Wertheim is entitled to judgment on liability for Count 1.

## B.  Retaliation

Count 2 alleges Potter retaliated against Wertheim for exercising FMLA rights.  The Court disagrees and grants summary judgment for Potter.

Retaliation and interference claims differ in a major way: "To prove FMLA retaliation, an employee must show that his employer *intentionally* discriminated against him." *Martin v. Brevard Cnty. Pub. Schs.*, 543 F.3d 1261, 1267 (11th Cir. 2008).  Put different, plaintiff "must show that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (cleaned up).  Both direct and circumstantial evidence are permissible to make that showing.  *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1214 (11th Cir. 2021).

Wertheim says each type of evidence supports his claim.  The Court addresses them individually.

*1. Direct*

"Direct evidence is evidence, which if believed, proves existence of fact in issue without inference or presumption." *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997) (cleaned up). "As a result, only the most blatant remarks, whose intent could be nothing other than to discriminate . . . will constitute direct evidence of discrimination." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) (cleaned up). For example, "direct evidence would be a management memorandum saying, 'Fire [plaintiff]—he is too old.'" *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). If the evidence merely "*suggests* discrimination, leaving the trier of fact to *infer* discrimination," it is circumstantial evidence. *Id.* at 1081-82.

Employment lawyers often throw around the phrase direct evidence. In reality, such cases are few and far between. *E.g.*, *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987) ("It is rare that direct evidence of discrimination exists."). As usual, this is not a direct evidence case.

Wertheim's argument relies on Potter and Vitali's depositions. Below are some relevant remarks:

> [Counsel]: And if Mr. Wertheim had not taken FMLA leave, would he have been terminated?
>
> [Potter]: If he was continuing to work, then he would have still been working.
>
> [Counsel]: So the answer is no?

[Potter]:  Yes.

(Doc. 26 at 2).  The other pertinent exchange follows:

> [Counsel]:  Is it accurate to say that Defendant's decision to not reinstate Mr. Wertheim had nothing to do with his performance?
>
> [Vitali]:  That would be accurate.
>
> [Counsel]:  Was he a good employee?
>
> [Vitali]:  He did a good job.  Yeah.
>
> [Counsel]:  So if he hadn't gone out on leave would there have been any reason to fire him?
>
> [Vitali]:  Well, I mean, again, he wasn't terminated. He just wasn't reinstated.
>
> [Counsel]:  Okay.  That's fair, so let me put it this way: If Mr. Wertheim hadn't gone out on FMLA leave there wouldn't have been any reason to separate his employment.  Right?
>
> [Vitali]:  No.  Presumably if he had continued working he'd still be working.

(Doc. 27 at 3).

Neither deposition presents direct evidence of FMLA retaliation because an inference of intentional discrimination is necessary.  *See Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020) (explaining the statement "new policy in the company: no more Cuban people" was not direct evidence of discriminatory termination of a Cuban American based on his national origin).

One must infer the reason Potter and Vitali refused to reinstate Wertheim was in retaliation *because* Wertheim took leave (which is the entire crux of an FMLA retaliation claim).

As Potter argues, he bases his refusal to reinstate Wertheim on the key employee exception. For that exception to apply, employee must take (or at least contemplate) FMLA leave. And the purpose of the exception is to "deny restoration" to certain employees in special circumstances. 29 U.S.C. § 2614(b)(1). So each employee meeting this exception cannot be denied reinstatement unless she took leave in the first place. And where (as here) employee has no performance issues, she would presumably still be working absent leave. *See* (Docs. 26 at 2; 27 at 3). In other words, Potter is right that accepting Wertheim's position would read the key employee exception out of the regime because nearly every invocation of it would meet the question posed. To get direct evidence from a yes-no deposition question, counsel typically needs to ask direct questions. *See Damon*, 196 F.3d at 1359 (reiterating "only the most blatant remarks . . . will constitute direct evidence" (cleaned up)). The statements Wertheim relies on do not fall into that category given these facts.

According to Wertheim, it would be hard to picture plainer direct evidence of discrimination. He's wrong. And his lawyer confirmed that at

Director's deposition by asking a good question which—if answered in the affirmative—would be direct evidence:

> [Counsel]:  Now—okay.  And so he—Mr. Wertheim was fired because he went out on leave?

(Doc. 28 at 3).  Counsel was free to ask Potter and Vitali that question.  But he chose not to do so.  When counsel asked that direct evidence question though, the answer was a resounding "no."   Director accompanied it with an explanation Wertheim was replaced because the sheriff's office thought it complied with the key employee exception:

> [Counsel]:  Why was he fired?
>
> [Director]:  He was separated because he was a—identified as a key employee—a key—yeah.  A key employee.  A highly-compensated employee as far as FMLA standards, and that they had filled that position with another general counsel.
>
> [Counsel]:  *Now—okay.  And so he—Mr. Wertheim was fired because he went out on leave?*
>
> [Director]:  *He wasn't fired because he went out on leave.  No.  He wasn't fired because he went out on leave.*
>
> [Counsel]:  But he wasn't fired for performance.  Right?
>
> [Director]:  Not that I'm aware of.  No, sir.
>
> [Counsel]:   So he was fired because he was a key employee?
>
> [Director]:  He was separated because he was deemed a key employee as far as FMLA standards.

> [Counsel]:  Okay.  So if he hadn't gone out on FMLA he wouldn't have been fired.  Right?
>
> [Director]:  Well, I can't say that.  I don't know.  I don't know if he would have got fired or not.  But when he went on FMLA, as it states in the policy, you know, that he—because he's a highly compensated salaried individual he was deemed a key employee, and they had decided to use that rule in his place, but he was still employed.
>
> [Counsel]:  Well, they used the rule to terminate him.  Is that what you're saying?
>
> [Director]:  They didn't use the rule to terminate him.  They just—they used the rule because it applied.

(Doc. 28 at 3-4) (emphasis added).

As much as Wertheim relies on a ten-year-old, nonbinding case from Maryland, the Court disagrees.  *See Neel*, 778 F. Supp. 2d at 604-05.  *Neel*'s analysis of the interference issue is on the mark.  But for retaliation, the case isn't helpful.  Judges cannot find direct evidence by inference—which *Neel* implied.  *Todd*, 998 F.3d at 1215.  Since employer gave inadequate key employee notice, *Neel* discounted its contention about "context" explaining the statement.  Such a conclusion here would be legal error.  *See id.* (rejecting direct evidence argument that "invites us to pluck a single line from [deposition] testimony, to read that line in isolation, and to divorce that line from its context").  Both Potter and Vitali's depositions clarify they contend the key employee exception—not retaliation—was the reason to not reinstate.

(Docs. 26 at 2-5; 27 at 2-3, 9-12).  What's more, *Neel* improperly conflated retaliation and interference.  It held employer could not rely on the key employee exception because notice was improper.  Yet whether notice was adequate for interference is a different question from if employer intentionally discriminated against employee for taking FMLA leave.

In short, this is not a direct evidence case.  So Wertheim must prove intentional discrimination another way for Count 2 to survive.

### 2.  *Circumstantial*

When plaintiff offers no direct retaliation, courts apply the *McDonnell Douglas* framework to marshal the circumstantial evidence.[4]  *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006).  Plaintiff must make three showings for a prima facie FMLA retaliation claim: "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was casually related to a protected activity."  *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1275 (11th Cir. 2012) (citation omitted).  If plaintiff does that, "the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action."  *Munoz v. Selig Enters., Inc.*, 981 F.3d 1265, 1275 (11th Cir. 2020).  Should

---

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

employer carry that light load, "the burden shifts back to the employee to produce evidence that the employer's reason is pretextual." *Id.*

This inquiry proceeds in three parts. Wertheim stumbles at the third step—pretext.

First, Wertheim made a prima facie case. There is no dispute he engaged in protected conduct (i.e., took FMLA leave) and suffered an adverse employment decision (i.e., was denied reinstatement). So the parties only disagree whether the decision to deny restoration was causally related to Wertheim's leave.

"To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013) (cleaned up). Wertheim can establish the leave and denial aren't "wholly unrelated" by showing "the decision maker was aware of the protected conduct at the time of the adverse employment action." *Krutzig,* 602 F.3d at 1234. What's more, temporal proximity usually does the trick on causation. *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Temporal proximity (in this context) is "measured from the last day of an employee's FMLA leave until the adverse employment action at issue occurs." *Gulf Coast*, 854 F.3d at 1272.

Potter and Vitali knew about Wertheim's leave. And it would be tough for the temporal proximity to be any closer. Potter made the decision to deny reinstatement during Wertheim's leave. So the adverse employment action took effect at the end of leave.

In sum, Wertheim made a prima facie case.

Second, Potter offered a legitimate, nondiscriminatory reason for the decision. He denied reinstatement, as the argument goes, because of the decision to invoke the key employee exception given the need for legal advice during the evolving pandemic. This "might motivate a reasonable employer," so Potter met his low burden of production. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024, 1030 (11th Cir. 2000) (en banc).

And third, with the burden shifted back, Wertheim failed to show Potter's offered explanation was mere pretext for unlawful discrimination. *See Gulf Coast*, 854 F.3d at 1271 (Plaintiff "must show that the supposedly legitimate reason was in fact a pretext designed to mask illegal discrimination.").

"A reason is not pretext for retaliation unless it is shown *both* that the reason was false, *and* that retaliation was the real reason." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (cleaned up). Importantly, "employee must rebut the reason head on and cannot succeed by simply quarreling with the wisdom of that reason." *Hornsby-Culpepper v.*

*Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018) (cleaned up).  To do so, plaintiff should show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Gogel*, 967 F.3d at 1136 (citation omitted).

Wertheim's argument on retaliation hinges almost entirely on his theory of direct evidence.  As explained, the relevant testimony was not direct.  What's more, the statements are hardly probative of intentional discrimination.  *See Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (reiterating evidence must be "significantly probative" of pretext (citation omitted)); *Hornsby-Culpepper*, 906 F.3d at 1315.  When viewed in context, Potter and Vitali's statements do little to help Wertheim's cause.

Wertheim never got fired, just not reinstated after FMLA leave.  Potter and Vitali made that decision and explained it at their depositions.  According to them, the sheriff's office was dealing with the unfolding COVID state of emergency and needed legal representation to navigate those uncertain times.  (Docs. 26 at 2; 27 at 2-3).  During Wertheim's leave, the sheriff's office had no legal counsel to advise on the fast-changing orders and standards from those early pandemic days.  So while Wertheim was on leave, Vitali found another lawyer for the job.  That attorney understandably wanted to ensure the position was permanent, not temporary, before taking the job.  (Doc. 31 at 6).

And since the budget allowed only one general counsel, Potter and Vitali made the decision not to reinstate Wertheim because it would (in their estimation) create substantial and grievous economic injury.  As they understood it, the key employee exemption permitted the refusal of Wertheim's reinstatement in this fashion.  (Doc. 27 at 9-11); *see also* (Docs. 28 at 3-4, 27; 28-6 at 11).

Potter and Vitali's after-the-fact statements were consistent with the stated rationale for not reinstating Wertheim—which is the same explanation offered during this case.  Potter's reason for failing to restore Wertheim has always been invocation of the key employee exception.  And applying an FMLA exception (without more) is not unlawful FMLA retaliation.  As the argument goes, Potter did not replace Wertheim *because* he took leave; Potter replaced Wertheim *because* he needed legal counsel as the pandemic developed, did not have the budget for two lawyers, and thought the FMLA permitted denial of reinstatement.   In full, the depositions do not reveal weaknesses or inconsistencies needed to show pretext.

To meet his burden, Wertheim must meet the offered reason head on instead of merely saying it was wrong.  And he should point to facts suggesting Potter's explanation is puny, irrational, or in some way unbelievable.  *Gogel*, 967 F.3d at 1136.  But Wertheim fails to do so.

His position falls back on Potter's failure to provide adequate Notice B. Once more, however, improper notice alone does not automatically suggest (let

alone show) intentional retaliation.  And the unrebutted facts here merely imply the relevant decisionmakers thought they complied with the FMLA. Potter, Vitali, and Director all mistakenly believed that notifying Wertheim of the need to return by a certain day or be replaced would have itself been FMLA interference.  (Docs. 28 at 8-9; 27 at 10); *see also* (Doc. 26 at 3).  This is not an implausible explanation since such notice is like an ultimatum (i.e., the exact argument their lawyer made above).  Nobody at the sheriff's office contacted counsel to ensure compliance with the exemption.  Instead, they relied on Director's interpretation of it and her training.  (Doc. 28 at 26).

True, this evidence suggests Potter (more accurately Director) misunderstood the key employee requirements, resulting in failure to provide compliant notice.  That is not intentional discrimination though.  "The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head."  *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). As it relates to retaliation, the question is not whether Potter got it right; rather, the inquiry asks if "unlawful discriminatory animus motivated the decision."  *Id.* (cleaned up).  As courts often say, "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason."

*Id.* (citation omitted).   So Wertheim's insistence on quarreling with the appropriateness of notice is largely beside the point.

Nor does Wertheim offer anything to cast doubt on this explanation.  At most, he showed nonlawyers (Potter, Vitali, and Director) slightly misapplied an obscure exception to a complex statutory and regulatory regime amid an unprecedented global pandemic.  But the record does not offer a reason to disbelieve this explanation.  Quite the opposite, everything supports Potter's consistent account.

Immediately upon taking leave, Potter notified Wertheim of his key employee status and warned him about the possibility of not getting reinstated. Potter did not look for a replacement right away.   In fact, Director brainstormed with Wertheim about ways the sheriff's office could help ameliorate his pain and get him back to work (e.g., a compression belt, cushion, or standing breaks).  It was only after a doctor note extended Wertheim's leave that Potter and Vitali decided an immediate replacement was needed.  By then, the sheriff's office had been without general counsel—at the beginning of the pandemic—for about a month.  And they did not know exactly when Wertheim could return to work or even if he could return full time over the next six

months.[5]  Rather, they seemed to proceed from doctor visit to doctor visit, unsure when they would have a general counsel again.  So Potter and Vitali hired a lawyer, then decided reinstating Wertheim would result in substantial and grievous economic injury.  Notably, Wertheim does not challenge the sufficiency of that determination.[6]  In short, no evidence suggests failing to provide full notice was pretext for unlawful retaliation.

Finally, Wertheim points to temporal proximity.  While timing is usually enough to show causation at the prima facie step, it is typically not enough to demonstrate pretext on its own.  *E.g.*, *Wascura v. City of S. Miami*, 257 F.3d 1238, 1244-45 (11th Cir. 2001); *Gogel*, 967 F.3d at 1137 n.15.  This is true here given Potter's offered reason.  Any invocation of the key employee exception will be around the time employee takes or contemplates leave.  So any temporal proximity argument cannot carry the day.

As in most cases, the standard here is crucial.  Wertheim must not only show Potter's offered explanation is false; he must also show the real reason motivating his nonreinstatement was intentional retaliation for taking FMLA leave.  *Gogel*, 967 F.3d at 1136.  At bottom, he failed to carry that burden.

---

[5] The parties' dispute on this is not genuine as the relevant FMLA documents speak for themselves.  Wertheim's doctor could estimate neither the probable duration of his condition nor the frequency of its flare ups.  (Doc. 29-1 at 223-24, 228, 258).

[6] As to interference, Wertheim says Potter's notice failed to fully explain the finding.  But he never attacked the merits of that decision.

Much of his argument relies on questioning the wisdom of Potter's decision and reiterating he was a good employee. It is not the Court's place to weigh Potter's business judgment nor parse Wertheim's job performance. *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (cautioning against letting employees "litigate whether they are, in fact, good employees" and getting "in the business of adjudging whether employment decisions are prudent or fair"). Potter, therefore, is entitled to judgment on Count 2.[7]

## C. Disability Discrimination

Finally, the Complaint alleges three FCRA disability claims: disparate treatment (Count 3), failure to accommodate (Count 4), and retaliation (Count 5). As Potter contends, each claim fails.

Courts construe FCRA in accordance with the ADA. *Holly v. Clairson Indus., Inc.*, 492 F.3d 1247, 1255 (11th Cir. 2007); *City of Delray Beach v. DeSisto*, 197 So.3d 1206, 1209 (Fla. Dist. Ct. App. 2016). "FCRA does not define the term 'handicap.'" *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 926 (Fla. Dist. Ct. App. 2007). So it is interpreted in line with "the ADA's definition of a

---

[7] Wertheim does not assert another theory of liability like convincing mosaic. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (clarifying *McDonnell Douglas* is not the only way to prove a circumstantial retaliation case). Even if he did, repackaging a flimsy pretext case into a convincing mosaic framework is untenable. *E.g., Fonte v. Lee Mem'l Health Sys.*, No. 2:19-cv-54-FtM-38NPM, 2020 WL 4596872, at *10 & n.7 (M.D. Fla. Aug. 11, 2020) (collecting cases).

'disability.'" *Id.*; *see also Ring v. Boca Ciega Yacht Club, Inc.*, 4 F.4th 1149, 1156 (11th Cir. 2021).

Disability discrimination plaintiffs must somehow meet the definition of an individual with a "disability." 42 U.S.C. § 12102(1)(A)-(C). Wertheim does not contend he suffered discrimination on any theory of recorded impairment or being regarded (or perceived) as impaired.[8] He must thus show an actual disability under the ADA. *Holly*, 492 F.3d at 1255-56; *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996) ("A physical impairment, standing alone, however, is not necessarily a disability as contemplated by the ADA.").

To be disabled, one must have "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities could be things like "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). Whether an impairment substantially limits some activity should not invite "extensive analysis." 29

---

[8] The Complaint made a conclusory allegation on being perceived as disabled. Even if that were sufficient to raise the issue, Wertheim does not pursue a regarded as theory in his summary judgment briefing. So he abandoned that position. *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) (Those "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012).

C.F.R. § 1630.2(j)(1)(iii).   And the "impairment need not prevent, or significantly or severely restrict, the individual" to qualify.   *Id.* § 1630.2(j)(1)(ii).  But a major life activity must be limited "as compared to most people in the general population."  *Id.*; *Munoz*, 981 F.3d at 1272.

Following amendments, courts should broadly construe disabilities and any substantial limits.  42 U.S.C. § 12102(4)(A)-(B); 29 C.F.R. § 1630.2(j)(1)(i). Even with liberal construction, plaintiff must offer evidence of a disability all the same.  *Munoz*, 981 F.3d at 1273-74 (affirming summary judgment because "we cannot say [plaintiff] is disabled under the ADA"); *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1180-81 (11th Cir. 2019); *Charles v. Johnson*, 18 F.4th 686, 703-04 (11th Cir. 2021); *EEOC v. STME, LLC*, 938 F.3d 1305, 1316 (11th Cir. 2019).

Wertheim failed to show substantial impairment of a major life activity (i.e., he didn't establish disability).  Or he failed to make the necessary showing for his FCRA claims.  The Court explains why in four parts.

*1. Activity*

To start, there is no evidence of an impaired major life activity.  The record points to Wertheim's inability to drive an hour to work as his affected life activity.  One dispositive problem for Wertheim exists: driving is not a major life activity.  Driving is a quintessential aspect of American life.  Even so, driving to work is not a major life activity under the ADA.  *Chenoweth v.*

*Hillsborough Cnty.*, 250 F.3d 1328, 1329-30 (11th Cir. 2001); *Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1157-58 (11th Cir. 2005) (holding "driving is not a major life activity for purposes of the ADA").[9]  There is no need to belabor the point because Potter is correct.  So Wertheim cannot be disabled over an inability to commute.  And any evidence related to his driving limitations is irrelevant to the disability question.

### 2. *Limitations*

Leaving that aside, Wertheim attempts to recast his purported disability through summary judgment briefing.  He now contends his back pain substantially limited his ability to sit and work, which were not alleged.[10]  Amending a pleading through briefing is impermissible.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").  At any rate, Wertheim's new theory is broader than the record supports.

---

[9] *See also Burgos v. Chertoff*, 274 F. App'x 839, 842 (11th Cir. 2008); *Carlson v. Liberty Mut. Ins.*, 237 F. App'x 446, 448 (11th Cir. 2007); *Rigby v. Springs Indus., Inc.*, 156 F. App'x 130, 131 (11th Cir. 2005); *Winsley v. Cook Cnty.*, 563 F.3d 598, 603-04 (7th Cir. 2009); *Kellogg v. Energy Safety Servs. Inc.*, 544 F.3d 1121, 1126 (10th Cir. 2008); *Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 643 (2d Cir. 1998).

[10] A close review of the Complaint and Wertheim's deposition reveal these limits are outside the pleadings.  Wertheim confirmed the alleged disability was his back condition.  (Doc. 29 at 41).  According to the Complaint, that disability demanded "a leave of absence or work from home as an accommodation." (Doc. 1 at 3).  This pleading contradicts Wertheim's new suggestion for a limitation on work abilities.  And the identified accommodations suggest what the case proceeded on through discovery (that driving was the limitation, not sitting).

Sitting and working are major life activities.  29 C.F.R. § 1630.2(i)(1)(i). But there is a complete absence of record support for concluding Wertheim has limits on those functions.   For backing, he cites two documents with no elaboration.  Neither helps.

First, Wertheim points to the initial FMLA form his doctor filled out.  Yet that document only confirms the activity at issue was driving:

> Is the employee unable to perform any of his/her job functions due to the condition:  ____ No  _X_ Yes
>
> If so, identify the job functions the employee is unable to perform:
>
> Long drive time
>
> 4.   Describe other relevant medical facts, if any, related to the condition for which the employee seeks leave (such medical facts may include symptoms, diagnosis, or any regimen of continuing treatment such as the use of specialized equipment):
>
> Patient has had multiple failed treatments for condition due to aggravations during drive.  Patient is currently unable to sit longer than 15-20 minutes without pain.  MRI reveals multiple disc bulges and disc protrusions leaving him susceptible for injury.

(Doc. 29-1 at 223).  The doctor specifically identified commuting as the only job function Wertheim could not perform.  And while the doctor mentioned sitting, it was in the context of aggravated pain during a drive.  Notably absent is any suggestion of a limit on Wertheim's ability to sit at his desk and work.  Now, consider Wertheim's job description, which the doctor apparently reviewed (or

at least had the chance to).  (Doc. 29-1 at 222-23, 229-32).  Under "Physical Demands," it says: "The employee frequently is required to sit." (Doc. 29-1 at 231).  If Wertheim had any separate substantial limit on sitting, surely his doctor would have noted that along with the inability to drive for long periods.

Second, Wertheim relies on an interrogatory answer:

> Plaintiff states his chronic back pain was exacerbated by the stress of Covid and his inability to receive his scheduled back injections to relieve pain.  Plaintiff additionally had to take multiple prescription medication [sic] for his back pain, which impeded his ability to drive the hour to DeSoto County from Sarasota.  Plaintiff states that sitting for long periods of time was excruciatingly painful during the time of his medical leave.  Plaintiff states the additional stress affected his chronic back pain, and once Colonel Vitali started interfering with Plaintiff's ability to work, including threatening his employment, it created even more pain for the Plaintiff.

(Doc. 29-1 at 170).  The discovery only references pain while sitting directly after referring to Wertheim's inability to drive long distances.  What's more, it does not explain the back pain in relation to sitting and working to conclude those activities were substantially limited.

Again, both references to sitting concern the function as it relates to Wertheim's long commute.  And while the record never hints at a limit on Wertheim's ability to work, he seems to imply inability to get to the office prevented him from working.  But this theory reconstructs driving as a major life activity under the guise of limitations on sitting and working.  Since driving

does not qualify (as explained above), the Court rejects Wertheim's late-offered premise.

Besides that, the Court still concludes Wertheim failed to show a disability. To establish substantial limits, plaintiff must offer the "severity, frequency, and duration of" impairment. *Lewis*, 934 F.3d at 1180. At a minimum, she must clarify (1) the "medical condition," (2) "what specific pain the condition caused," and (3) "the limitations on 'major life activities' . . . resulting from the condition and pain." *Mazzeo v. Color Resols. Int'l*, 746 F.3d 1264, 1269 (11th Cir. 2014). In this regard, "conclusory allegations by a plaintiff or his doctors will not suffice." *Suggs v. City of Sunrise*, No. 20-13884, 2022 WL 4296992, at *8 (11th Cir. Sept. 19, 2022); *see also Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1223 & n.24 (11th Cir. 2000). While plaintiff's bar is low, there must be some nonconclusory record evidence on substantial limitations. *See Mazzeo*, 746 F.3d at 1268-69.

The references above are the only citations Wertheim provides for his limitations. Yet these documents do not show Wertheim was substantially limited in working or sitting. Here's why.

The record only offers evidence showing no limitation (substantial or otherwise) on Wertheim's ability to work. Before his termination, Wertheim was medically cleared to return to the sheriff's office. He also accepted a job as a felony line prosecutor with the local state attorney's office. The position

started about a month after his FMLA leave ended and the termination became final. Since it would be outside the record, let's pretend we don't know that job includes sitting and standing all day long (like basically every lawyer job in the history of lawyering). This leaves Wertheim's clearance and current job as the only evidence on his ability to work as an attorney—indicating he can do so. *See, e.g.*, *Hudson v. Tyson Farms, Inc.*, 769 F. App'x 911, 916-17 (11th Cir. 2019) (holding employee not disabled because she returned to work without limitation and record only suggested a limit on her ability to work for employer, not on work in general).

What's more, no evidence supports the opposite inference of a substantial limit on Wertheim's ability to work. If one could liberally construe the record as touching on work, it only indicates he could not work or needed an accommodation because of the commute. In fact, that's what the Complaint alleged by contending remote work was an accommodation. And it tracks Wertheim's early emails to Vitali. (Doc. 29-1 at 115-24 ("With Tramadol being a controlled substance, I was unable to drive to work.")). Once again, that relates to driving. So Wertheim fumbled his burden to show a substantial limit on the major life activity of working. *Munoz*, 981 F.3d at 1273 ("[W]e cannot conclude [plaintiff's] impairments substantially limited her . . . because the record does not contain evidence of the timing, frequency, and duration of [her] impairments.").

Likewise, there is insufficient record support for the conclusion Wertheim was substantially limited in his ability to sit. He references documents saying, "sitting for long periods of time was excruciatingly painful during the time of his medical leave," (Doc. 29-1 at 170), and he was "unable to sit longer than 15-20 minutes without pain," (Doc. 29-1 at 223). Yet these statements—without more—are not enough. They provide no context into "the timing, frequency, and duration" of any impairment Wertheim had with sitting. *Munoz*, 981 F.3d at 1273. There is simply no way to assess "how often or how long [he] experienced these symptoms." *Id.* What's more, there is no suggestion for the degree or extent of Wertheim's limitation. *Suggs*, 2022 WL 4296992, at *9. On this limited record, therefore, it is impossible to say Wertheim was substantially limited "as compared to most people in the general population." *Munoz*, 981 F.3d at 1273.

Exacerbating the problem, Wertheim's doctor cleared him for "[f]ull, unrestricted duty" after reviewing his job description—which clarified frequent sitting was a requirement. (Doc. 29-1 at 269). In other words, the doctor concluded (with no explanation) Wertheim was not substantially limited in his ability to sit by the end of FMLA leave. The kicker is Wertheim never once testified on having any limitation on his sitting. He sat for a seven-hour deposition. Never once did he mention a limit on sitting. At one point, he asked for a five-minute break to stand and walk around. (Doc. 29-1 at 42, 45).

Even most liberally construed in his favor though, requiring a short break to stand and stretch is not a substantial limit compared to the general population. And if that were his basis for a substantial limit, he would again need to explain the timing, frequency, and duration of his need for standing breaks.[11] These facts distinguish cases in which substantial limits existed based on nonconclusory medical records or plaintiff testimony. *See Mazzeo*, 746 F.3d at 1268-70; *Suggs*, 2022 WL 4296992, at *9.

At bottom, Wertheim's showing could not establish he had a disability under the ADA or FCRA. *See Lewis*, 934 F.3d at 1180-81; *Munoz*, 981 F.3d at 1273-74; *Martin v. Teleperformance Inc.*, 839 F. App'x 443, 445 (11th Cir. 2021); *Holton v. First Coast Serv. Options, Inc.*, 703 F. App'x 917, 921-22 (11th Cir. 2017).

### 3. Retaliation

Analytically, the retaliation claim is a bit different from the other disability causes of action. But the answer isn't.

Plaintiff need not actually be disabled to bring an ADA retaliation claim. *Roberts v. Rayonier, Inc.*, 135 F. App'x 351, 357 (11th Cir. 2005); *Branscomb v. Sec'y of Navy*, 461 F. App'x 901, 905-06 (11th Cir. 2012). Rather, "it is sufficient that an employee have a good faith, objectively reasonable belief that his

---

[11] Along with that, Wertheim would need to explain how this impacts his failure to accommodate claim. Director offered a standing break accommodation. (Doc. 29 at 31).

activity is protected by the statute." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  As relevant here, Wertheim's "belief that he was disabled [must be] objectively reasonable." *ABEL*, 161 F.3d at 1328.[12]

So what belief is reasonable?  Some guidance follows:

> A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.  It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002) (citation omitted).  Crucially, objective reasonableness "must be measured against existing substantive law." *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999).  So when it comes to objectivity, courts must assume plaintiffs are generally familiar with the law—including what constitutes a disability and major life activity.  *E.g.*, *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 & n.2 (11th Cir. 1998) (collecting cases); *Butler v. Ala. Dep't of Transp.*,

---

[12] *See also Satchel v. Sch. Bd. of Hillsborough Cnty.*, 251 F. App'x 626, 629 (11th Cir. 2007); *Roberts*, 135 F. App'x at 357; *Luna v. Walgreen Co.*, 575 F. Supp. 2d 1326, 1343 (S.D. Fla. 2008); *Bowen v. Quest Diagnostics Inc.*, No. 19-62664-CIV-CANNON/Hunt, 2021 WL 2583495, at *12 (S.D. Fla. June 2, 2021); *Carroll v. Neumann*, 204 F. Supp. 2d 1344, 1355 (S.D. Fla. 2002).

536 F.3d 1209, 1214 (11th Cir. 2008).   In the end, Wertheim must show his impairment was "close enough" to a disability, making it "objectively reasonable" to believe an ADA violation occurred.   *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citation omitted); *see also ABEL*, 161 F.3d at 1328-29.

For the same reasons as those described in Sections C.1. and C.2., Wertheim did not have an objectively reasonable belief he was disabled and entitled to protection under the ADA.   It is blackletter law an impairment must substantially limit a major life activity.   42 U.S.C. § 12102(1)(A).   On this record, it would be objectively unreasonable for Wertheim to believe he met that standard.   *See ABEL*, 161 F.3d at 1328-29; *Satchel*, 251 F. App'x at 629; *Carroll*, 204 F. Supp. 2d at 1355.

In short, Wertheim's insufficient showing on disability dooms each of his FCRA claims.   If Wertheim could show a disability, these causes of action would fail all the same.

### 4.  *Alternate Holdings*

ADA discrimination cases employ the *McDonnell Douglas* framework too.   *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).   That analysis, therefore, applies to Wertheim's disparate treatment and retaliation claims.   *Batson v. Salvation Army*, 897 F.3d 1320, 1328-29 (11th Cir. 2018) (retaliation); *Duckworth v. Pilgrim's Pride Corp.*, 764 F. App'x 850, 853 (11th

Cir. 2019) (disparate treatment).  As for the failure-to-accommodate count, the burden-shifting approach is likely inapplicable.  *Nadler v. Harvey*, No. 06-12692, 2007 WL 2404705, at *8-9 (11th Cir. Aug. 24, 2007) (We "hold that *McDonnell Douglas* burden-shifting is not applicable to reasonable accommodation cases."); *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 n.2 (4th Cir. 2021) (same).  So the Court addresses Counts 3 and 5 before turning to Count 4.  It does so in four parts.

First, Wertheim fails to establish causation.  To be sure, temporal proximity (Wertheim's only developed argument) is usually sufficient.  Yet, here, it is unclear how he suffered an adverse employment action causally related to his disability.  Wertheim was not fired.  Nor was he denied his purported accommodation (i.e., leave from work).  Rather, Potter refused to reinstate Wertheim from his FMLA leave.  And he does nothing to explain how this suggests a causal connection between the refusal and his disability.  In a conclusory way, Wertheim reiterates the same argument and evidence presented on FMLA discrimination.  At most though, this suggests Potter discriminated against Wertheim because of FMLA leave, not because of any disability.

On causation, the decisionmaker must know about the protected conduct.  *Krutzig*, 602 F.3d at 1234-35.  But Wertheim offers nothing to imply the decisionmakers (Potter and Vitali) had any idea his FMLA was a requested

accommodation.  So he did not carry his burden to demonstrate a prima facie case of intentional disability discrimination.   What's more, there is no comparator evidence to help Wertheim establish causation.  *See Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1218, 1221-24 (11th Cir. 2019) (en banc).

Second, Wertheim's cut-and-paste argument on pretext fails for the same reasons as above regarding FMLA.  There is no evidence to meet his burden of showing Potter's offered explanation was mere pretext for disability discrimination or retaliation.

As much as Wertheim lobs a shifting explanations argument, he misunderstands the law.  Pretext might exist where employer offers shifting reasons *for the adverse employment action*.  *E.g., Henderson v. Lab. Corp. of Am. Holdings*, 851 F. App'x 972, 978 (11th Cir. 2021).  Potter never did so as the reason for not reinstating Wertheim has always been invocation of the key employee exception.  Nor is anything inconsistent.  Director stated throughout that she discussed accommodations with Wertheim, who never asked for one. Wertheim conceded this conversation occurred.  (Doc. 29 at 31).  No matter what counsel now wants to argue, nothing in the record suggests Wertheim actually sought an accommodation.  The new argument that his leave was intended to be an accommodation request is Wertheim's inconsistency—not Potter's.  And even if this evidence could somehow be construed as Potter being

inconsistent, it says nothing about the reason for the adverse employment action.  So it means little for pretext on unlawful disability discrimination.

Given the deficient *McDonnell Douglas* showings as they relate to Counts 3 and 5, those claims fail.

Third, moving onto the failure to accommodate claim, Wertheim never requested an accommodation.

The Court recently analyzed making an ADA accommodation request in some detail.  *Rood v. Town of Fort Myers Beach*, No. 2:20-cv-981-SPC-KCD, 2022 WL 3544398, at *4-7 (M.D. Fla. Aug. 18, 2022).  There is no need to do so again here.  The bottom line is employee must somehow give employer "enough information to know of both the disability and desire for an accommodation." *Hunt v. Aimco, Props., LP*, 814 F.3d 1213, 1226 (11th Cir. 2016) (citation omitted); *see also D'Onofrio v. Costco Wholesale Corp.*, 964 F.3d 1014, 1022 (11th Cir. 2020).

Wertheim failed to carry his burden to show he actually requested an accommodation.  *See Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (The duty to accommodate "is not triggered unless a specific demand for an accommodation has been made.").  According to him, his FMLA leave was intended as a FCRA reasonable accommodation request.  But based on this record, as above, there was no reason for Potter (or any subordinates) to construe the leave request as Wertheim asking for an

accommodation.  Nor did he provide Potter enough information to know about any disability that might have existed.  Again, Wertheim only points to evidence that would support his request for leave as related to the inability to commute.  And finally, Director seemingly engaged in an informal interactive process by discussing possible accommodations with Wertheim.  During this time, Wertheim could have identified leave as an accommodation.  Yet he does not even contend that occurred.  Rather, Wertheim merely relies on his implied intentions from requesting FMLA leave, which are insufficient.

Taking FMLA leave might—depending on the facts—amount to a request to accommodate.  *E.g.*, *Schoebel v. Am. Integrity Ins. Co. of Fla.*, No. 8:14-cv-426-T-27AEP, 2015 WL 4231670, at *6 (M.D. Fla. July 10, 2015). Wertheim identifies no record evidence he requested an accommodation though.  *See Adigun v. Express Scripts, Inc.*, 742 F. App'x 474, 476-77 (11th Cir. 2018) (holding FMLA leave forms did not contain enough information to serve as accommodation request).  So Count 4 cannot succeed.  *See Rood*, 2022 WL 3544398, at *4-7 (collecting cases).

And fourth, even if the scant evidence were enough to liberally construe taking FMLA as a request, the accommodation was unreasonable.[13]

---

[13] Wertheim expressly waived any theory related to remote work as a reasonable accommodation.  (Doc. 35 at 27 ("Plaintiff's failure to accommodate claim is premised on his requests for leave from work, not his requests to work from home.")).  So it is not considered.

Employee's "leave of absence might be a reasonable accommodation in some cases." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). To be reasonable, however, the request cannot be for "an indefinite leave." *Id.* A leave request might become "unreasonable if it does not allow someone to perform his or her job duties in the present or immediate future." *Id.*

Wertheim contends there is a genuine dispute on whether his request was for indefinite leave. As mentioned above, the relevant documents speak for themselves, and the dispute isn't genuine. (Doc. 29-1 at 223-24, 228, 258). According to Wertheim, the leave request had an outer time limit of the doctor's certification periods or his FMLA leave. Yet none of these references conveyed when Wertheim might be able to return to work. They only reflect periods during which doctor stated Wertheim could not work (without explanation) and when his follow up appointment would be. Worse yet, the FMLA documentation brims with notes indicating doctor could not estimate how long Wertheim would be out. (Doc. 29-1 at 223-24). At one point, doctor was "unable to estimate" how often Wertheim would have flare-ups rendering him unable to work over the next six months. (Doc. 29-1 at 224). Nor was FMLA a solid boundary. Again, nothing in the documentation suggested Wertheim could return to work at the end of leave.

At bottom, Wertheim cites no evidence from which Potter could have known he was requesting anything besides indefinite leave. So Wertheim loses

on Count 4. *See Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1226 (11th Cir. 1997) ("Plaintiff's request that his employer accommodate any disability Plaintiff had by providing him with two more months leave when he could not show he would likely be then able to labor is not 'reasonable' within the meaning of the ADA."); *Wood*, 323 F.3d at 1314; *Adigun*, 742 F. App'x at 476-77; *Billups v. Emerald Coast Utilities Auth.*, 714 F. App'x 929, 934-35 (11th Cir. 2017); *Santandreu v. Miami Dade Cnty.*, 513 F. App'x 902, 905-06 (11th Cir. 2013).

For all those reasons, the Court grants Wertheim judgment as to liability on Count 1 and Potter judgment as to Counts 2 through 5. Since the only remaining issue is damages for Count 1, the Court refers the parties to a settlement conference with the unassigned Magistrate Judge.

Accordingly, it is now

**ORDERED:**

1. Defendant's Case Dispositive Motion for Summary Judgment (Doc. 25) is **GRANTED and DENIED in part**.

   a. The Motion is **GRANTED** to the extent that Defendant is entitled to judgment on Counts 2, 3, 4, and 5.

   b. In all other respects, the Motion is **DENIED**.

2. Plaintiff's Motion for Partial Summary Judgment as to Liability Under Counts 1 and 2 (Doc. 32) is **GRANTED and DENIED in part**.

a. The Motion is **GRANTED** to the extent that Plaintiff is entitled to judgment as to liability on Count 1.

b. In all other respects, the Motion is **DENIED**.

3. This case is **REFERRED** to United States Magistrate Judge Kyle Dudek to conduct a settlement conference and issue any appropriate order.  All parties must attend the settlement conference as directed by Judge Dudek.

a. The parties must **CONTACT** Judge Dudek's Chambers, **on or before October 25, 2022**, to schedule a mutually agreeable time for the settlement conference.

b. The Clerk is **DIRECTED** to add Judge Dudek to the docket for settlement purposes only.

**DONE** and **ORDERED** in Fort Myers, Florida on October 18, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record